

FILED

FILED

FEB 1 0 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOCKETED

FEB 1 1 2004

| | |
|---|---|
| CAREFIRST OF MARYLAND, INC. <br> d/b/a CAREFIRST BLUE CROSS BLUE SHIELD <br> 10455 Mill Run Circle <br> Owings Mills, Maryland 21117 <br><br> Plaintiff, <br><br> v. <br><br> CAREFIRST PREGNANCY CENTERS, INC. <br> d/b/a CAREFIRST <br> 104 S. Michigan Avenue <br> Chicago, Illinois 60603 <br><br> and <br><br> CAREFIRST PREVENTION SERVICES, INC. <br> d/b/a CAREFIRST <br> 104 S. Michigan Avenue <br> Chicago, Illinois 60603 <br><br> Defendants. | ) <br> ) JUDGE JOAN H. LEFKOW <br> ) <br> ) <br> ) <br> ) Civil Action: <br> ) <br> ) 04C 1044 <br> ) <br> ) MAGISTRATE JUDGE KEYS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR FEDERAL COLLECTIVE
MEMBERSHIP MARK INFRINGEMENT, TRADEMARK
INFRINGEMENT, SERVICE MARK INFRINGEMENT;
FEDERAL UNFAIR COMPETITION, AND FEDERAL DILUTION;
STATE COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiff, Carefirst of Maryland, Inc., hereby files its complaint against defendants Carefirst

Pregnancy Centers, Inc. and Carefirst Prevention Services, Inc., and respectfully alleges as follows:

<u>JURISDICTION</u>

1. This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a)

*1 — 1*

because the action arises under an Act of Congress relating to trademarks. This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(b) because the action asserts a claim of unfair competition joined with a substantial and related claim under the trademark laws. This court has original jurisdiction over this civil action pursuant to 15 U.S.C. § 1121 because the action arises under Title 15, United States Code, Chapter 22. This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States. This court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state law and common law claims in this civil action because the state law or common law claims are so related to claims over which this court has original jurisdiction that the state law and common law claims form part of the same case or controversy under Article III of the United States Constitution.

<u>THE PARTIES</u>

2.      Plaintiff, Carefirst of Maryland, Inc. d/b/a Carefirst Blue Cross Blue Shield ("Carefirst"), is considered the largest "health organization" within the Mid-Atlantic states, and is a corporation organized under the laws of the state of Maryland having its principal place of business at 10455 Mill Run Circle, Owings Mills, Maryland 21117. Plaintiff is a health organization, and offers a variety of HMO related services, PPO related services, traditional indemnity insurance and other related medical and health services, including prenatal and postnatal care and counseling, and substance abuse care and counseling under the CAREFIRST mark and name.

3.     Defendant, Carefirst Pregnancy Centers, Inc. d/b/a Carefirst is, on information and belief, a non-profit corporation organized under the laws of the state of Illinois having its principal place of business at 104 S. Michigan Avenue, Chicago, Illinois 60603.  Defendant Carefirst Pregnancy Centers, Inc. is an evangelical  pro-life group that offers prenatal and postnatal care and counseling and which solicits donations nationwide under the CAREFIRST mark and name.

4.     Defendant, Carefirst Prevention Services, Inc. is, on information and belief, a non-profit corporation which is owned by Carefirst Pregnancy Centers, Inc. and which is organized under the laws of the state of Illinois, having its place of business at 104 S. Michigan Avenue, Chicago, Illinois 60603.  Defendant, Carefirst Prevention Services, Inc., is an evangelical pro-life group that offers substance abuse care and counseling under the CAREFIRST mark and name and which, on information and belief, solicits donations nationwide under the CAREFIRST mark and name.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

### Plaintiff

5.     The CAREFIRST mark and name is Plaintiff's most important asset and has been continuously used by plaintiff and its predecessors for over 26 years since 1977.  On information and belief, the CAREFIRST mark and name has been used by CAREFIRST members to indicate their membership in CAREFIRST throughout the United States, including the state of Illinois since 1977.

6.     By reason of a number of assignments from various predecessors, plaintiff is the title owner of the following federal trademark, service mark and collective membership mark registrations for the CAREFIRST mark, which are valid, subsisting, unrevoked and incontestable under 15 U.S.C. §§ 1065 and 1115(b).

–3–

(a) Registration No. 1,543,100 for "CAREFIRST" [collective membership mark] dated June 6, 1989 (incontestable; filed September 3, 1987).

(b) Registration No. 1,546,326 for "CAREFIRST" [trademark and service mark] dated July 4, 1989 (incontestable; filed May 24, 1985).

True and correct copies of these Certificates of Registration are attached as Exhibits A and B respectively.

7.     Plaintiff, title owner of the CAREFIRST mark and name, serves as the licensor to Carefirst, Inc., a corporation organized under the laws of the state of Maryland, which in turn, serves as the managing corporation for a number of independent Blue Cross and Blue Shield licensees including but not limited to Carefirst of Maryland, Inc. f/k/a Blue Cross and Blue Shield of Maryland, Inc., Group Hospitalization and Medical Services, Inc. a/k/a Blue Cross Blue Shield of the National Capital Area, and Blue Cross Blue Shield of Delaware, Inc. Collectively and through Carefirst, Inc., these companies operate and offer health maintenance and preferred provided related services, as well as traditional indemnity insurance and third party administrative services to approximately 3.2 million members residing within 38 different states with a predominant portion of the membership residing within the states of Maryland, Delaware, Pennsylvania, West Virginia, the District of Columbia, and the Commonwealth of Virginia. Other members reside throughout the country including the state of Illinois, where Carefirst of Maryland has approximately 9,148 members who reside within the state.

8.     The CAREFIRST mark and name has become the house mark for the Carefirst

–4–

Organization and has come to symbolize the identity of the CAREFIRST health organization with substantial good will symbolized by the CAREFIRST mark and name. Initially, plaintiff traces use of the CAREFIRST mark and name to Metropolitan Baltimore Healthcare, Inc. which in 1977, through a grant from the former United States Department of Health, Education and Welfare under the 1973 HMO Act, created one of the first HMO's in the country and began to offer prepaid healthcare plans under the CAREFIRST mark and name.

9.      In 1984, Metropolitan Baltimore Healthcare, Inc. was purchased by Healthcare Corporation of the Mid-Atlantic, Inc., which, in turn, continued to operate the Carefirst HMO and continued to provide healthcare plans and related services, including prenatal, postnatal, and substance abuse care and counseling under the CAREFIRST mark and name to its membership.

10.     In 1989, Healthcare Corporation of the Mid-Atlantic, Inc. was purchased by Healthcare Corporation of America, Inc., which, in turn, continued to operate the Carefirst HMO and to provide related services including prenatal, postnatal and substance abuse care and counseling under the CAREFIRST mark and name to its membership.

11.     In 1991, Healthcare Corporation of America, Inc., and Healthcare Corporation of the Mid-Atlantic, Inc. were acquired by intermediary corporations owned by Blue Cross and Blue Shield of Maryland, Inc. From 1991 to 1997, Blue Cross and Blue Shield of Maryland, Inc., through various corporate structures, continued to use and operate the Carefirst HMO and provide prepaid healthcare plans and related services under the CAREFIRST mark and name, including prenatal, postnatal, and substance abuse care and counseling.

12.     In late 1997, Blue Cross and Blue Shield of Maryland, Inc. and Group Hospital and

–5–

Medical Services, Inc. a/k/a Blue Cross Blue Shield of the National Capital Area agreed to affiliate and be managed by Carefirst, Inc. and to operate jointly and collectively under the CAREFIRST mark and name.

13.     In 2000, Blue Cross Blue Shield of Delaware, Inc. agreed to affiliate and be managed by Carefirst, Inc. and to operate collectively under the CAREFIRST mark and name, (hereinafter the "Carefirst Organization").

14.     The Carefirst Organization is obligated to provide under contract, comprehensive medical services, products and care directly to enrolled members. These contracts impose upon the Carefirst Organization a special duty to protect Carefirst's enrolled members from a likelihood of confusion with marks which are similar to the Carefirst mark and name as used on or in connection with closely related goods and services.

15.     The CAREFIRST mark and name is used to indicate comprehensive medical services that are rendered to or on behalf of members of the Carefirst Organization.

16.     The CAREFIRST mark and name is used on membership cards as a collective membership mark by members to indicate membership in the Carefirst Organization.

17.     Upon application and acceptance, each member and his or her dependents receives a CAREFIRST membership card.

18.     Membership in Carefirst entitles each member to payment for emergency healthcare anywhere in the world and to non-emergency health care upon prior notification and approval by the respective health care provider organization owned by the Carefirst Organization. Membership in any one of the CAREFIRST health maintenance or preferred provider organizations is honored by most health care facilities in the United States provided that the member notifies CAREFIRST and an appropriate claim is filed.

19.     To obtain payment for emergency health care, a member must present his

–7–

CAREFIRST membership card.

20.     The CAREFIRST mark and name is also used as a trademark to indicate the source of goods such as enrollment kits for the organization, membership packets and newsletters, and as a trade name to distinguish plaintiff's CAREFIRST health maintenance and preferred provider organizations from other health related organizations.

21.     As part of the various products, services and attributes of membership, the Carefirst Organization is composed of individuals interested, as stated in plaintiff's certificate of registration, in preventive medicine, prepaid medical plans, reduced healthcare costs, and programs on fitness, prenatal care, substance abuse and other health related topics, and since 1977 the Carefirst Organization and its predecessors have offered educational services, namely seminars, classes, workshops and lectures on nutrition, infant care, prenatal care, fitness, weight reduction, stress management, and substance abuse.

22.     Such information and programs are provided to the CAREFIRST member either at specific locales, over the internet at <www.carefirst.com> and/or in print. Exhibit C attached hereto, is a true and correct copy of relevant pages from plaintiff's web site relating to prenatal care and which are accessible to plaintiff's 3.2 million members including the 9,148 members that currently reside within the state of Illinois. Exhibit C provides in detail, for example, information on prenatal and postnatal care.

23.     At present, the Carefirst Organization processes approximately 120,000 claims a day and upon satisfaction of a claim, the Carefirst Organization typically transmits an Explanation of Benefit letter to the member. Thus, each time anyone of the 9,148 members that reside within the

state of Illinois receives medical services, that member presents his or her CAREFIRST membership card and receives an Explanation of Benefits letter with the CAREFIRST mark and name affixed thereon. Exhibit D attached hereto is a true and correct copy of a Carefirst membership card and Exhibit E is a true and correct copy of an Explanation of Benefits letter.

24.     The Carefirst Organization has expended over $40 million in the promotion of the CAREFIRST mark and name since 1996. Throughout its history, the mark and name has been advertised in daily publications of nationwide circulation such as the Baltimore Sun and the Washington Post; has been extensively advertised through television and radio; and has been advertised through other publications such as the Washington Business Journal, the Baltimore Business Journal, Time magazine, Newsweek magazine and U.S. News and World Report. The CAREFIRST mark and name has been extensively promoted on billboards along interstate highways and on posters and signs within mass transit facilities. A Lexis/Nexis search reveals that there have been over 1,600 separate news articles about CAREFIRST which mention or refer to CAREFIRST since 1986. The CAREFIRST mark and name is plaintiff's most important asset, representing significant goodwill accrued from advertising, promotion, and use as a collective membership mark throughout the United States.

25.     Plaintiff and its affiliated corporate members of Carefirst, Inc., are independent licensees of the Blue Cross Blue Shield Association, which licensor is located in Chicago, Illinois. Plaintiff also is considered by relevant trade publications to be one of the 26 national health care organizations presently operating within the United States

<u>Defendants</u>

26.     On information and belief, defendant Carefirst Pregnancy Centers, Inc. was organized on June 7, 1985 in the state of Illinois initially under the name Loop Crisis Pregnancy Centers and operated under that name until 1998. In 1998, Loop Crisis Pregnancy Centers, Inc. changed its name to Chicago Care Pregnancy Centers. Due to a conflict with another organization with a similar name, ChicagoCare Pregnancy Centers changed its name to Carefirst Pregnancy Centers d/b/a Carefirst sometime in 2000. Exhibit F is a true and correct copy of pages printed from the world wide Internet Illinois Secretary of State Web site on March 13, 2001 showing that Carefirst Pregnancy Centers, Inc. is an active Illinois corporation and that its date of incorporation under its predecessor's name was on June 7, 1985.

27. Based on the November 19, 2003 testimony [in an unrelated proceeding] of defendants' President, Nancy Good, when Chicago Pregnancy Centers decided to change its name in May of 1999, defendants at that time contracted with a naming company and conducted focus group studies.

28.     Based on Ms. Good's November 19, 2003 testimony, the CAREFIRST mark and name was selected as the mark and name having the qualities and attributes of what defendants wanted to project in the market place.

29.     Based on Ms. Good's November 19, 2003 testimony, in July of 1999, defendants, through counsel, conducted a full availability search through Thomson & Thomson, a private trademark search firm. In that search, the first six references listed were to Plaintiff's federal registrations and applications for CAREFIRST owned or filed by plaintiff, and references 12 through 23 of that report depicted other registrations and applications plaintiff and its predecessors owned, including variations of the CAREFIRST mark and name, namely, LIBERTY CAREFIRST,

CAREFIRST and DESIGN, PHYSICIANS' CAREFIRST, FIRSTCARE and THE CAREFIRST PLAN.

30.     The Thomson & Thomson report relied upon by defendants not only disclosed 18 separate references to the CAREFIRST mark and name as owned by plaintiff and its predecessors, but indicated that plaintiff has been actively involved in no less than 14 different opposition proceedings before the United States Patent and Trademark Office in the enforcement and protection of the CAREFIRST mark and name.

31.     On information and belief, through no less than two separate legal counsels, defendants were advised generally that any use of the CAREFIRST mark and name could be deemed an infringement of plaintiff's incontestable and conclusive rights to the exclusive use of the CAREFIRST mark and name, particularly if plaintiff was able to show "penetration of the Illinois market place," and/or if people were otherwise to believe that defendants were somehow sponsored, endorsed or affiliated with plaintiff.

32.     On information and belief, defendants intentionally ignored the significance of plaintiff's collective membership mark registration, the preambulatory nature of plaintiff's CAREFIRST members and the fact that since 1977 plaintiff's members have received medical care in Chicago, Illinois and continue to receive medical care in Chicago, Illinois. For example, Exhibits G, H, and I are true and correct copies of claims paid to providers in Illinois from the 1985-1986 time range by reason of CAREFIRST members receiving medical care in the Chicago metropolitan area.

33.     On information and belief, defendants intentionally ignored that plaintiff has had

−11−

throughout the years and presently has a number of members that reside within the state of Illinois, including the Chicago metropolitan area, who are students, retirees, and/or employees of the 40,000 companies that have enrolled with plaintiff, many of which have business operations outside of the mid-Atlantic states.

34.     On information and belief, defendants intentionally ignored that use of the CAREFIRST mark and name by a pro-evangelical pro-life group could lead many people, including plaintiff's members and other Blue Cross Blue Shield entities and employees, into believing that plaintiff has sponsored, endorsed, or is affiliated with a pro-evangelical pro-life point of view, a highly controversial and polarizing view upon which plaintiff must remain neutral.

35.     In September 1999, in a callous and complete disregard of plaintiff's federal and incontestable rights to the CAREFIRST mark and name, defendants' Board of Directors ratified the decision to change its name from Chicago Pregnancy Centers to Carefirst Pregnancy Centers, Inc. and to adopt and use the name Carefirst Prevention Services. Exhibit J attached hereto, are true and correct copies of the minutes from the Board of Directors meeting.

36.     On information and belief, Carefirst Pregnancy Centers, Inc. is the owner of the following domain names which were originally purchased in the name of ChicagoCare Pregnancy Centers on December 9, 1999; (1) <carefirstpc.com,> (2) <carefirstpc.net,> and (3) <carefirstpc.org>. (See attached Exhibit K for a true and correct copy of the Network Solutions "WHOIS" Web site information). At various times since 2000, and as recently as of November 2003, these domain names served as direct connections or as domain name aliases and directed internet traffic to Web sites that appeared at http://www.carefirstpc.org and http://www.carefirstpc.net. (See Exhibits L and M for a true and correct copy of these web sites) and to a web site that is presently located at http://www.careonecenters.com, which web sites prominently display the CAREFIRST mark and name.

37.     On information and belief, defendants presently serve more than 6,000 women a year

–13–

over the global computer network, through toll free telephone numbers, and through seven different centers, where they provide prenatal and postnatal related services including free pregnancy tests, counseling and encouragement, support groups for new moms and women who have had an abortion, spiritual care, the provision of maternity and baby clothing and baby-related equipment, and referrals to professional organizations. (See attached Exhibit N for a true and correct copy of excerpts from the www.carefirstpc.com Web site) as well as substance abuse related care and services.

38.    All five of these Web sites provide a link for donations to Capital Dynamics at http://www.capitaldynamics.com. (See Exhibit O for a true and correct copy of this link).

39.    On January 12, 2001, plaintiff's counsel made a donation of $5.00 by credit card to Carefirst Pregnancy Centers by filling out a form online at the http://www.carefirstpc.com Web site and a few minutes later received a response from Capital Dynamics and Carefirst Pregnancy Centers thanking her for her donation. (See Exhibit P for a true and correct copy of these documents). A few weeks later, plaintiff's counsel received in the U.S. mail at her residence within the state of Maryland, an unsolicited brochure soliciting further donations to "CAREFIRST." Exhibit Q, is a true and correct copy of the brochure received by plaintiff's counsel.

40.    On October 26, 2000, plaintiff, through counsel, forwarded a cease and desist letter to Carefirst Pregnancy Centers, Inc. demanding that defendant cease and desist all uses of CAREFIRST and any confusingly similar term. Defendant, Carefirst Pregnancy Centers, Inc., had until November 15, 2000 to confirm that it would cease and desist all uses of CAREFIRST mark and name. (See Exhibit R for a true and correct copy).

41.    When defendant Carefirst Pregnancy Centers, Inc. failed to agree to cease and desist

−14−

use, Carefirst of Maryland, Inc. did file on January 31, 2001, suit against defendant Carefirst Pregnancy Centers, Inc. in U.S. District Court for the District of Maryland, in an action styled *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc. et al.*, Civil Action No. 01-CV-1578.

42.    By order dated January 2, 2002, the U.S. District Court for the District of Maryland did grant defendant's Motion to Dismiss for lack of personal jurisdiction.  Said order was affirmed by the Fourth Circuit Court of Appeals on July 3, 2003 in *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Center, Inc.* 334 F.3d 390, 67 USPQ 2d 1243 (4th Cir. 2003).

43.    During the pendency of the action in Maryland, defendant's voluntarily switched using <carefirstpc.com> as their direct URL, and opted instead to acquire and begin using <careonepc.com,> with <carefirstpc.com> and other <carefirstpc> domain name variations serving as a domain name aliases.

44.    Following the 4th Circuit Court's decision, defendant's quickly reverted back to the use of <carefirstpc.com.> as its direct URL in contrast to <careonepc.com>.

45.    On information and belief, as of November 2003, defendants, after the testimony of their President, Nancy Good, made the domain name <carefirstpc.com> inactive, and began using <careonecenters.com>.

46. Since the October 26, 2000 cease and desist letter and despite initiation of a federal court action in Maryland, defendants refuse to cease use of the CAREFIRST mark and name, continue to use the CAREFIRST mark and name in connection with their pregnancy related services and various Web sites, to solicit donations nationwide under the CAREFIRST mark and name, and continue to

–15–

use the CAREFIRST mark and name in connection with their substance abuse care and counseling

program.

47.     Based upon information and belief, defendants have used and are presently using in connection with their prenatal and postnatal care and counseling services, and their substance abuse care and counseling services, the CAREFIRST mark and name within the state of Illinois and surrounding areas, and throughout the nation over the Internet.

48.     Not only are defendants using the CAREFIRST mark and name within the state of Illinois, but they have intentions to expand beyond the state of Illinois as evidenced by defendants' obtaining state registrations for CAREFIRST in the states of Indiana, Wisconsin, and perhaps elsewhere, and are using the CAREFIRST mark and name for solicitation of donations on a nationwide basis.

49.     Defendants are presently using the term CAREFIRST, which is a colorable imitation and an appropriation of plaintiff's house mark CAREFIRST.

50.     Defendants offer services under the CAREFIRST mark and name at their seven centers within the state of Illinois, solicit donations throughout the United States and elsewhere, and offer counseling and pro-life related advocacy over their Web site all in complete disregard of plaintiff's previously used CAREFIRST mark and name and its federal registrations that issued no less than 11 years before the use of CAREFIRST by defendants.

## I. FIRST CLAIM FOR RELIEF

### Federal Trademark, Service Mark and Collective Membership Mark Infringement under 15 U.S.C. §§1054 and 1114

51.     Plaintiff Carefirst incorporates by reference the allegations set forth in paragraphs 1 through 50 inclusive insofar as they are applicable to this claim for relief.

–17–

52.     This is a claim arising under 15 U.S.C. §1114, as amended, and 15 U.S.C. §1054, as amended, for willful and deliberate infringement by defendants of plaintiff's collective membership mark, service mark and trademark for CAREFIRST.

53.     Since long before the use of CAREFIRST by defendants, plaintiff Carefirst, its predecessors and its members have continuously and in good faith used throughout the United States the CAREFIRST mark and name to indicate the source of its medical related services, products and membership activities, including prenatal, postnatal and substance abuse care and counseling.

A.  PLAINTIFF'S SERVICE MARK RIGHTS

54.     Plaintiff Carefirst is the title owner of U.S. Service Mark Registration No. 1,546,326 (Exhibit B) covering the mark "CAREFIRST" for use in connection with a variety of health related services, including but not limited to, underwriting and administrative services, on a prepayment basis, relating to emergency medical care; prepaid financing and administration of medical care, pharmaceutical care and related health care services; educational services, namely, seminars, classes, workshops, and lectures on nutrition, infant care, prenatal care, fitness, weight reduction, stress management and substance abuse; health care services in the nature of a health maintenance organization; consulting services in connection therewith; the selection of health care providers in order to provide health care services at reduced costs to participating members so as to contain health care costs; rehabilitation services for disabled persons; and organizational services, namely promoting the interests of persons concerned with personal health maintenance and safety.

55.     Plaintiff's Service Mark Registration No. 1,546,326 for CAREFIRST is, because of its incontestability, conclusive evidence of the validity of the CAREFIRST service mark, of the

CAREFIRST registration, of plaintiff's ownership of the CAREFIRST service mark, and of plaintiff's exclusive right to use, without condition or limitation, the mark in commerce on or in connection with the services specified in the certificate of registration under U.S.C. § 1115.

### B. PLAINTIFF'S COLLECTIVE MEMBERSHIP MARK RIGHTS

56.     Long before the use of CAREFIRST by defendants, members of plaintiff Carefirst and its predecessors have continuously and in good faith used throughout the United States the collective membership mark CAREFIRST to indicate membership in Carefirst's health related organizations.

57.     Plaintiff Carefirst is the title owner of U.S. Collective Membership Mark Registration No. 1,543,100 (Exhibit A) dated June 6, 1989 covering the mark CAREFIRST.

58.     Plaintiff Carefirst's registered mark is used by individual members throughout the United States to obtain emergency and non-emergency medical services and by member participants of plaintiff Carefirst to indicate their membership or participation in an organization of persons and medical providers interested in health maintenance, preventive medicine, prepaid medical plans, reduced health costs, and programs on fitness, prenatal care, substance abuse and other health-related topics.

59.     Collective Membership Mark Registration No. 1,543,100 (Exhibit A), because of its incontestability, is conclusive evidence of the validity of the CAREFIRST collective membership mark, of the CAREFIRST registration, of plaintiff Carefirst's ownership of the collective membership mark, and of plaintiff Carefirst's exclusive right to legitimately control the use, without condition or limitation, said mark by individual members and member participants in commerce and

in connection with the uses specified in the certificate of registration under 15 U.S.C. § 1115. Under 15 U.S.C. §1054, as amended in 1988, collective membership marks are to be given the same effect as are trademarks under 15 U.S.C. §1051 et seq. as amended.

## C. PLAINTIFF'S TRADEMARK RIGHTS

60.     Since long before the use of CAREFIRST by defendants, plaintiff Carefirst and its predecessors have continuously and in good faith used the mark CAREFIRST throughout the United States to indicate the source of enrollment kits, membership handbooks, and newsletters. Said products are disseminated to prospective and active members of plaintiff's CAREFIRST health related organizations, and to the benefit departments of numerous companies. At present, the Carefirst Organization has contractual arrangements with over 40,000 different companies.

61.     Plaintiff Carefirst is the title owner of U.S. Trademark Registration No. 1,546,326 (Exhibit B) covering the mark CAREFIRST for use in connection with newsletters that pertain to health care, medical care and membership services.

62.     Plaintiff Carefirst's U.S. Trademark Registration No. 1,546, 326, because of its incontestability, is conclusive evidence of the validity of the CAREFIRST trademark, of the CAREFIRST registration, of plaintiff Carefirst's ownership of the CAREFIRST trademark and of plaintiff's exclusive right to use, without condition or limitation, the trademark in commerce on or in connection with the goods specified in the certificate of registration under 15 U.S.C. § 1115.

## D. OTHER RIGHTS OF PLAINTIFF

63.     Because of the continuous and prior use by plaintiff Carefirst herein, its predecessors, and its members of the CAREFIRST mark and name as a service mark, as a collective membership

mark and, where applicable, as a trademark, CAREFIRST has become known to the relevant trade,

business community and the public.

64.     As a result of plaintiff Carefirst's membership enrollment, continuity, length of use, advertising and promotion of its services under the CAREFIRST mark and name, this service mark has acquired a secondary meaning as indicating the source and origin of plaintiff Carefirst's health care and related services. This service mark is protectable by plaintiff Carefirst which has acquired proprietary rights therein.

65.     As a result of plaintiff Carefirst's membership enrollment, continuity, length of use, advertising and promotion of its organizations under the CAREFIRST mark and name, and as a result of use by its members, this collective membership mark has acquired a secondary meaning throughout the United States as indicating membership in plaintiff Carefirst's various organizations. This collective membership mark is protectable by plaintiff Carefirst which has acquired proprietary rights therein.

66.     As a result of plaintiff Carefirst's membership enrollment, continuity, length of use, advertising and promotion of its products under the CAREFIRST mark and name, this trademark has acquired a secondary meaning as indicating the source and origin of plaintiff Carefirst's enrollment kits, membership handbooks and newsletters and such trademark is protectable by plaintiff Carefirst, which has acquired proprietary rights therein.

E. DEFENDANT'S ACTS OF INFRINGEMENT

67.     Defendants first rendered their services under the "CAREFIRST PREGNANCY CENTERS," "CAREFIRST PREVENTION" and the CAREFIRST mark and name, sometime in 2000 and after it had actual knowledge and actually discussed the prior use of CAREFIRST by plaintiff and its various predecessors, and after defendants' considered plaintiff's federal registrations

-22-

for CAREFIRST.

68.     Defendants continue to offer in commerce services under the CAREFIRST mark and name.

69.     The services offered and rendered by defendants under the CAREFIRST mark and name are closely related to the various services, medical services, products, and membership services and programs offered by plaintiff under its CAREFIRST mark and name.

70.     Defendants' subsequent and deliberate adoption and use of the CAREFIRST mark and name in connection with closely related services is likely to confuse plaintiff's members, members of the trade, the business community, and the public, and lead them to the erroneous belief that the services and products offered by defendants under the CAREFIRST mark and name originate with or are sponsored or endorsed by plaintiff Carefirst, all to plaintiff's irreparable harm, damage, and detriment.

71.     Defendants' subsequent use and willful adoption of the CAREFIRST mark and name in connection with closely related services, not only is likely to create a likelihood of confusion as to source, sponsorship and affiliation, but also reverse confusion, wherein other Blue Cross Blue Shield entities, other health related organizations and members thereof, including members of plaintiff's organizations, are likely to believe that plaintiff, not defendant, is the infringer of the CAREFIRST mark and name, all to the injury and detriment of plaintiff.

72.     Defendants' subsequent use and willful adoption of the CAREFIRST mark and name in connection with closely related services is likely to create not only confusion as to source, sponsorship and affiliation, and reverse confusion, but disparages plaintiff's name and identity by

–23–

associating plaintiff's name and identity with a pro-life evangelical organization and the abortion issue, perhaps the most polarizing issue in modern America, well beyond plaintiff's ability to control its reputation, all to its injury and detriment.

73.    Defendants' willful and deliberate adoption of the CAREFIRST mark and name, and the subsequent rendering of closely related services under said mark and name have irreparably harmed and irreparably damaged plaintiff and will continue to irreparably harm plaintiff unless enjoined by this court.

74.    Since October, 2000, the parties have been engaged in sporadic communications in an attempt to settle the dispute regarding defendants' use of the CAREFIRST mark and name.

75.    Despite being sued in Maryland, defendants have to date, refused to cease use of the CAREFIRST mark and name, all in violation of plaintiff's legitimate and conclusive rights to the exclusive use of the CAREFIRST mark and name.

76.    Defendants' intentional use in commerce of the CAREFIRST mark and name without plaintiff's consent and in connection with the offering and distribution of services in the prenatal, postnatal and substance abuse care and counseling field, constitutes a reproduction, counterfeit, copy, and colorable imitation of plaintiff Carefirst's registered marks for CAREFIRST as used in connection with the specified goods, services and membership indicia.

77.    Such use by defendants is likely to cause confusion, or to cause mistake, or to deceive, all in violation of plaintiff's exclusive and conclusive right to use the CAREFIRST house mark and name.

78.    Defendants' intentional use in commerce, including over the worldwide Web and in

–24–

the states of Illinois, Wisconsin and Indiana of the mark CAREFIRST without plaintiff's consent and

in connection with labels, signs, prints, packages, wrappers, receptacles, or advertisements that are

intended to be used in connection with the advertising of defendants' goods or services, constitutes

an impermissible reproduction, counterfeit, copy and colorable imitation of plaintiff's registered

marks for CAREFIRST as used in connection with the specified goods, services, and membership

indicia, all in violation of plaintiff Carefirst's exclusive and conclusive right to use said

CAREFIRST mark and name in commerce.

## II. SECOND CLAIM FOR RELIEF

### Federal Unfair Competition Under 15 U.S.C. §1125(a).

79. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 78

inclusive insofar as they are applicable to this claim for relief. This is a claim arising under 15

U.S.C. §1125(a), as amended, for federal unfair competition and false designation of origin.

80. Defendants, having actual knowledge of the prior use of the CAREFIRST mark and

name by plaintiff Carefirst and its various predecessors, did use in interstate commerce, including the

state of Maryland, and in connection with prenatal, postnatal and substance abuse related services the

designation CAREFIRST which tends to falsely describe and represent a false designation of origin

with plaintiff Carefirst.

81. The services offered and provided by defendants under the CAREFIRST mark and

name are closely related, if not substantially identical, to the various services, products and

membership activities offered by plaintiff Carefirst under its CAREFIRST mark and name.

82. Defendants' subsequent adoption and use of the CAREFIRST mark and name in

–25–

connection with prenatal and postnatal related services as well as in connection with substance abuse care and counseling is apt to create a likelihood of confusion and falsely describe and falsely represent to plaintiff's members, members of the trade, the business community, and the public, that the services offered and rendered by defendants under the CAREFIRST mark and name in some way originate with or are sponsored or endorsed by plaintiff Carefirst, all to plaintiff's irreparable harm, damage and detriment.

83.    Defendants' subsequent adoption and use of the CAREFIRST mark and name in connection with prenatal and postnatal related services as well as in connection with substance abuse care and counseling not only is apt to create a likelihood of confusion through a false description and representation, but is also likely to lead members of plaintiff's organization, members of the trade, the business community, and the public, into the erroneous belief that defendants are authorized members of the CAREFIRST organization, or that plaintiff, not defendant, is the infringer within the doctrine of reverse confusion, all to plaintiff's irreparable harm, damage and detriment.

84.    Defendants' subsequent use and willful adoption of the CAREFIRST mark and name in connection with closely related services is likely to create not only a likelihood of confusion as to source, sponsorship and affiliation, as well as reverse confusion; but also disparages plaintiff's name and identity by associating it with a pro-life evangelical organization and the abortion issue, perhaps the most polarizing issue in modern America, well beyond plaintiff's ability to control its reputation and all to its injury and detriment.

85.    Without question and by their own admission under penalties of perjury, defendants not only knew of the prior use and federal registrations for the CAREFIRST mark and name by

plaintiff Carefirst and its predecessors in connection with medical related services, medical products,

and membership activities, but actually discussed and assumed a calculated risk in commencing use

of the CAREFIRST mark and name, all in violation of plaintiff's conclusive rights to the exclusive

use of the CAREFIRST mark and name.

86.     Defendants' willful and deliberate adoption of the CAREFIRST mark and name and their subsequent rendering of closely related services under said mark and name have irreparably harmed and irreparably damaged plaintiff and will continue to irreparably harm and irreparably damage plaintiff unless enjoined by this court.

87.     To date, defendants have refused to cease use of the CAREFIRST mark and name despite a prior lawsuit and written communications with defendants.

88.     Defendants' continued, unauthorized, willful, and deliberate use of the CAREFIRST mark and name in connection with closely related services in interstate commerce constitutes a false designation of origin and federal unfair competition, all in violation of plaintiff Carefirst's conclusive rights to exclusively use the term CAREFIRST as a service mark, collective membership mark, and trademark, and of plaintiff Carefirst's conclusive right to exclusively trade under the name CAREFIRST.

### III. __THIRD CLAIM FOR RELIEF__

### Common Law Unfair Competition and Infringement

89.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 88 of this complaint inclusive, insofar as they are applicable to this claim for relief.  This is a claim arising under the common law of Maryland, West Virginia, Delaware, Pennsylvania, Illinois, Virginia and the District of Columbia (collectively, the "Territory") for common law unfair competition and infringement.

90.     Since long before the use of CAREFIRST by defendants, plaintiff Carefirst and its members have continuously and in good faith used the CAREFIRST mark and name throughout the

United States including all of the aforementioned states and districts in connection with obtaining emergency and non-emergency medical care as more specifically described above.

91.     As a consequence of the use and of such use through members of plaintiff's various health related organizations in the United States, including use in the aforementioned Territory, plaintiff Carefirst has acquired common law service mark, common law collective membership mark, common law trademark, and common law trade name rights within said areas for CAREFIRST.

92.     With actual knowledge of the prior use of the CAREFIRST mark and name by plaintiff Carefirst and its predecessors, defendants willfully and deliberately adopted and used the CAREFIRST mark and name in connection with closely related services, and because of the nature of said services, has used the mark within the Territory as well as throughout the United States to obtain donations and to promote their evangelical and pro-life mission.

93.     Plaintiff has neither authorized, licensed, nor consented to defendants' common law use within the Territory. Such use by defendants constitutes unfair competition and infringement of plaintiff Carefirst's common law service mark, common law collective membership mark, common law trademark, and common law trade name as established in the term CAREFIRST, under the common law of the District of Columbia and of each of the states of the Territory.

94.     Defendants' subsequent, willful and deliberate adoption and use of the CAREFIRST mark and name in connection with closely related services, has caused, and is likely to cause, confusion among plaintiff's members, the trade, business community and the public within the Territory, and is likely to cause reverse confusion.

–29–

95.     Such use will continue to cause common law infringement and unfair competition within the Territory, all to plaintiff's irreparable harm, irreparable damage, and detriment.

96.     Plaintiff has no adequate remedy at law and will continue to be irreparably harmed unless defendants' use is enjoined by the court.

## IV.  **FOURTH CLAIM FOR RELIEF**

### **Federal Trademark Dilution**

97.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 96, inclusive of this complaint insofar as they are applicable to this claim for relief.  This is a claim arising under the Federal Trademark Dilution Act, 15 U.S.C. §1125(c).

98.     Since long before the use of CAREFIRST by defendants, plaintiff Carefirst and its predecessors have continuously and in good faith used the CAREFIRST mark and name in connection with its services, products and membership indicia.

99.     Plaintiff's CAREFIRST mark and name is a distinctive and famous mark within the meaning of 15 U.S.C. §1125(c)(1).

100.    Defendants' commercial use in commerce of CAREFIRST as a mark and trade name began after plaintiff's CAREFIRST mark and name had become famous.

101.    Defendants' aforementioned actions constitute "dilution" of plaintiff's CAREFIRST mark and name within the meaning of 15 U.S.C. § 1127.

102.    Defendants' commercial use in commerce of CAREFIRST as a mark or trade name causes dilution of the distinctive quality of plaintiff's CAREFIRST mark and name in violation of Carefirst's rights under 15 U.S.C. § 1125(c)(1).

103. Plaintiff is entitled to injunctive relief from this court against defendants, under 15 U.S.C. § 1125(c)(2).

104.    Defendants, by their aforementioned actions, willfully intended to trade on plaintiff's reputation and to cause dilution of plaintiff's CAREFIRST mark. Plaintiff therefore seeks such monetary relief to which it is entitled pursuant to 15 U.S.C. § 1117, including the trebling of actual damages and reasonable attorneys' fees.

## V. <u>FIFTH CLAIM FOR RELIEF</u>

### Delaware Statutory Dilution and Injury To Business Reputation

105.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 104, inclusive of this complaint insofar as they are applicable to this claim for relief. This is a claim rising under 60 Del. Laws, § 3312 (2002) for injury to business reputation and dilution.

106.    Since long before the use of CAREFIRST by defendants, plaintiff Carefirst and its predecessors have continuously and in good faith used the CAREFIRST mark and name in connection with its services, products and membership indicia.

107.    As a consequence of the use and promotion of the CAREFIRST mark and name, plaintiff Carefirst's mark and name has achieved a known reputation and distinctiveness within the state of Delaware and within the managed care industry prior to defendants' use of CAREFIRST for its closely related services.

108.    Plaintiff Carefirst has an established business reputation and the exclusive right to use the CAREFIRST mark and name throughout the United States, including the state of Delaware.

109.    By reason of said prior use of the CAREFIRST mark and name, said mark and name has become distinctive in the minds of the trade, business community, and the public, of the quality of goods, services and membership rights offered by plaintiff Carefirst.

–32–

110. Defendants' subsequent, willful, and deliberate adoption and use of the CAREFIRST mark and name in connection with closely related services, particularly in connection with the solicitation of donations from donees located within Delaware, dilutes the distinctive quality of the CAREFIRST mark and name. Furthermore, defendants' aforementioned actions are likely to cause injury to the business reputation of plaintiff Carefirst since plaintiff Carefirst has no control over the nature and quality of the services being offered by defendants in connection with their confusingly similar and dilutive mark.

111. Defendants' subsequent, willful and deliberate adoption and use of the CAREFIRST mark and name dilutes the distinctive quality of the CAREFIRST mark and name. Furthermore, defendants' aforementioned actions are likely to cause injury to the business reputation of plaintiff Carefirst in Delaware since individual members or vendors of plaintiff 's organizations may erroneously believe that defendants are in some way associated with plaintiff Carefirst and believe that defendants are in some way sponsored by, endorsed by or affiliated with plaintiff, all to plaintiff's injury and detriment.

112. Defendants' subsequent, willful and deliberate adoption and use of the CAREFIRST mark and name on or in connection with closely related services including the solicitation of donations from residents of Delaware dilutes the distinctive quality of the CAREFIRST mark and name. Furthermore, defendants' aforementioned actions are likely to cause injury to the business reputation of plaintiff since plaintiff has no control over the nature and quality of services being offered by defendants in connection with their confusingly similar and dilutive mark.

WHEREFORE, Plaintiff respectfully requests:

I.      A trial by jury on all claims so triable;

II.     An Order of this Court holding that:

A.      Defendants, by subsequently adopting and using the CAREFIRST mark and name and similar variations thereof in the solicitation of donations on a national basis, as domain names and domain name aliases on the worldwide web, and in connection with prenatal and postnatal related services, as well as substance abuse care and counseling, which services are substantially identical or closely related to the various services, membership indicia, and goods of plaintiff, have committed federal trademark, service mark and collective membership mark infringement under 15 U.S.C. §1114 and unfair competition in violation of 15 U.S.C. §1125(a) and (b) of plaintiff's exclusive rights to use the CAREFIRST mark and name, which exclusive rights are conclusive under 15 U.S.C. § 1115(b).

B.      Defendants, by subsequently adopting and using the CAREFIRST mark and name and variations thereof, including use of "CAREONE" as a domain name and domain name alias on the worldwide web, in connection with prenatal and postnatal services, substance abuse care and counseling, and in their efforts to obtain donations throughout the United States, particularly from residents in the states of Maryland, Delaware, West Virginia, Pennsylvania, Illinois, the District of Columbia and the Commonwealth of Virginia, which activities are substantially identical or closely related to the various services, membership activities, and goods of plaintiff, have infringed plaintiff Carefirst's common law rights to the CAREFIRST mark and name and have committed common law unfair competition in violation of plaintiff's rights to the CAREFIRST mark and name, all in

violation of the common law for the states of Maryland, West Virginia, Delaware, Pennsylvania, the District of Columbia, the Commonwealth of Virginia; and the state of Illinois.

C.     Defendants, by subsequently adopting and using the CAREFIRST mark and name adopted and used, with knowledge, the mark of another.

D.     Defendants, by reason of their actual knowledge of the prior use of the CAREFIRST mark and name by plaintiff Carefirst and its various predecessors, and by adopting and using the mark and trade name CAREFIRST in connection with services substantially identical or closely related to the various services, membership rights, and goods of plaintiff, have intentionally and willfully committed federal trademark, service mark, and collective membership mark infringement under 15 U.S.C. §1114(1) and unfair competition in violation of 15 U.S.C. §1125(a) and (b).

E.     Defendants, by reason of their having actual and direct knowledge of the prior use of the CAREFIRST mark and name by plaintiff Carefirst and its various predecessors, and by adopting and using the mark and trade name CAREFIRST in connection with its counseling related services which services are substantially identical or closely related to the various services, membership activities, and goods of plaintiff, have intentionally and willfully infringed plaintiff Carefirst's common law rights to the CAREFIRST house mark and have intentionally committed common law unfair competition.

F.     Defendants, by subsequently adopting and using the CAREFIRST mark and name are in violation of 15 U.S.C. §1125(c).

G.     Defendants, by subsequently adopting and using the CAREFIRST mark and name have injured plaintiff's business reputation and diluted plaintiff's distinctive CAREFIRST mark and name in violation of 60 Del. Laws, § 3313(2000).

H.     Defendants, and their respective officers, agents, servants, employees, attorneys,

–36–

successors, assigns, members and all persons in active concert or participation with them, be permanently enjoined and restrained from further acts of unfair competition; service mark, collective membership mark, trademark, and trade name infringement; and dilution arising from their unlawful promotion and use of the CAREFIRST mark and name and colorable variants thereof, including but not limited to use of CAREONE, and

I. Defendants, be required to account and pay over to plaintiff Carefirst all "profits" (i.e., donations) accruing to defendants, and all damages suffered by plaintiff Carefirst from defendants' said wrongful acts and, because of the willful and deliberate nature of the conduct by defendants, the court enter judgment for plaintiff Carefirst for three times the damages and profits assessed on the federal claims and, to the extent available under law, punitive damages on the state law claims; That plaintiff recover its costs herein;

II. That plaintiff be awarded reasonable attorneys' fees and expenses incurred as a consequence of defendants' willful appropriation, infringement and intentional acts of unfair competition; and

III. That the court provide such other and further relief as this court shall deem just and equitable.

Respectfully submitted,

CAREFIRST OF MARYLAND, INC. d/b/a
CAREFIRST BLUE CROSS BLUE SHIELD

Kara Cenar
Julie A. Katz
Welsh & Katz, Ltd.
120 South Riverside Plaza, 22nd Floor
Chicago, Illinois 60606-3912
Tel.: (312) 655-1500
Fax: (312) 655-1501

Attorneys for Plaintiff

Barth X. deRosa
Ruth Mae Finch
STEVENS DAVIS MILLER MOSHER LLP
1615    L    Street,    N.W.,    Suite    850
 Washington, D.C. 20036
Telephone:    (202) 785-0100
Facsimile:    (202) 408-5200

Of Counsel to Plaintiff

## EXHIBITS

A - Reg. No. 1,543,100

B - Reg. No. 1,546,326

C - Carefirst Vital/Magazine

D - Membership Card

E - Explanation of Benefits

F - Corporate Information

G - True and Correct copy of claims paid to providers in Illinois from the 1985-1986 time range by reason of CAREFIRST members receiving medical care in the Chicago metropolitan area.

H - True and Correct copy of claims paid to providers in Illinois from the 1985-1986 time range by reason of CAREFIRST members receiving medical care in the Chicago metropolitan area.

I - True and Correct copy of claims paid to providers in Illinois from the 1985-1986 time range by reason of CAREFIRST members receiving medical care in the Chicago metropolitan area.

J - Minutes of the Board of Directors meeting

K - Network Solutions "WHOIS" Website information

L - Excerpts from the www.carefirstpc.com Web site

M - carefirst.org Website

N - www.carefirst.net Website

O - www.capitaldynamics.com Website

P - Copy of $5.00 credit card donation made by plaintiff's counsel

Q - Unsolicited brochure soliciting further donations to CAREFIRST

R - Copy of cease and desist letter dated October 26, 2000 from Plaintiff to Carefirst Pregnancy Centers, Inc.

# VOLUMINOUS RECORD

# PLEASE SEE CASE FILE

# FOR

# FURTHER INFORMATION

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED FEB 1 1 2004

FILED FOR DOCKETING

04 FEB 10 PM

CLERK U.S. DISTRICT COURT

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s):** CAREFIRST OF MARYLAND, INC. d/b/a CAREFIRST BLUE CROSS BLUE SHIELD

**Defendant(s):** CAREFIRST PREGNANCY CENTERS, INC. d/b/a CAREFIRST and CAREFIRST PREVENTION SERVICES, INC. d/b/a CAREFIRST

County of Residence:

County of Residence:

Plaintiff's Atty:    Kara E.F. Cenar/Julie A. Katz
Welsh & Katz, Ltd.
120 South Riverside Plaza,
22nd Floor Chicago, IL 60606
312/655-1500

Defendant's Atty:

04C 1044

II. Basis of Jurisdiction:    **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties (Diversity Cases Only)
Plaintiff:- **N/A**
Defendant:- **N/A**

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE KEYS

IV. Origin :    **1. Original Proceeding**

V. Nature of Suit:    **840 Trademark**

VI. Cause of Action:    **Federal Collective Membership Mark Infringement; Trademark Infringement; Servicemark Infringement; Federal Unfair Competition**

VII. Requested in Complaint
Class Action: **No**
Dollar Demand:
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: 2-10-04

1-2

**DOCKETED**

FEB 1 1 2004

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

In the Matter of

FILED FOR DOCKETING

CAREFIRST OF MARYLAND, INC.
d/b/a CAREFIRST BLUE CROSS BLUE SHIELD

04 FEB 10 PM 4:33

CAREFIRST PREGNANCY CENTERS, INC.
CAREFIRST PREVENTION SERVICES, INC.
d/b/a CAREFIRST

U.S. DISTRICT COURT

Case Number: 04C 1044

JUDGE JOAN H. LEFKOW

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

CAREFIRST OF MARYLAND, INC. d/b/a CAREFIRST BLUE CROSS BLUE SHIELD

MAGISTRATE JUDGE KEYS

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  Kara E.F. Cenar | NAME  Julie A. Katz |
| FIRM  Welsh & Katz, Ltd. | FIRM  Welsh & Katz, Ltd. |
| STREET ADDRESS  120 South Riverside Plaza, 22nd FL. | STREET ADDRESS  120 South Riverside Plaza, 22nd FL. |
| CITY/STATE/ZIP  Chicago, IL 60606 | CITY/STATE/ZIP  Chicago, IL 60606 |
| TELEPHONE NUMBER  312/655-1500  FAX NUMBER  312/655-1501 | TELEPHONE NUMBER  312/655-1500  FAX NUMBER  312/655-1501 |
| E-MAIL ADDRESS  kecenar@welshkatz.com | E-MAIL ADDRESS  jakatz@welshkatz.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6198864 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  0620451 |
| MEMBER OF TRIAL BAR?  YES ☑  NO ☐ | MEMBER OF TRIAL BAR?  YES ☐  NO ☑ |
| TRIAL ATTORNEY?  YES ☑  NO ☐ | TRIAL ATTORNEY?  YES ☐  NO ☑ |
|  | DESIGNATED AS LOCAL COUNSEL?  YES ☑  NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME  Joseph E. Cwik | NAME |
| FIRM  Welsh & Katz, Ltd. | FIRM |
| STREET ADDRESS  120 South Riverside Plaza, 22nd FL. | STREET ADDRESS |
| CITY/STATE/ZIP  Chicago, IL 60606 | CITY/STATE/ZIP |
| TELEPHONE NUMBER  312/655-1500  FAX NUMBER  312/655-1501 | TELEPHONE NUMBER  FAX NUMBER |
| E-MAIL ADDRESS  jecwik@welshkatz.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)  6229095 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?  YES ☐  NO ☑ | MEMBER OF TRIAL BAR?  YES ☐  NO ☐ |
| TRIAL ATTORNEY?  YES ☐  NO ☑ | TRIAL ATTORNEY?  YES ☐  NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☑ | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |

1-3

# INSTRUCTIONS FOR COMPLETING APPEARANCE FORM

1. General Information

Local Rule 53.17 provides that once an attorney has filed an appearance form on behalf of a party, no additional appearances or substitutions may be made without leave of court. The Rule also provides that the attorney may not withdraw without leave of court. Therefore, if more than one attorney is going to represent the party or parties shown on the front of this form, each should complete the attorney appearance section of the form.

This form is designed to permit the filing of appearances by up to four attorneys who represent the same party or parties. If more than four attorneys representing the same party or parties wish to file appearances, additional forms should be used and the letters (A), (B), (C), and (D) indicating the attorneys should be altered to (E), (F), (G), (H), respectively for the fifth through the eighth attorneys, etc.

2. Listing of Parties for Whom the Attorney is Appearing

The names of each of the parties represented by the attorney(s) filing the appearance are to be listed on the lines immediately below the words "Appearances are hereby filed by the undersigned as attorney(s) for:". The type of party, *e.g.*, plaintiff, defendant, third party plaintiff, should follow each party. If all of the parties are of the same type, *e.g.*, all parties represented are plaintiffs, then the type of party can be shown at the end of the listing of parties.

3. Completing Attorney Information

The information requested should be completed for each attorney filing an appearance. Where two or more attorneys are from the same firm, only the first listed from the firm need complete the information for firm name, street address, and city/state/ZIP. The others may indicate "Same as (letter designation of first attorney)."

4. Identification Number

Attorneys who are members of the Illinois bar should enter the identification number issued to them by the Illinois Attorney Registration and Disciplinary Commission (ARDC). Attorneys who are not members of the Illinois bar should leave this item blank.

5. Attorney (A) and Notices

Where more than one attorney is listed on the appearance form, all listed will be entered on the docket of the Clerk, as attorneys of record. However, notices will only be mailed to the attorney shown in box (A) on the form except where local counsel has been designated pursuant to Local Rule 83.15 (see below). The attorney is responsible for notifying all other attorneys included on the form of the matter noticed.

Where appearances are filed on behalf of attorneys representing a state or local government, *e.g.*, states attorney, corporation counsel, the persons filing the appearance may wish to list the name of the assistant who is in active charge of the case in box (A) and the appearance of the head of the

agency, *e.g.*, attorney general, corporation counsel, or any other assistant assigned to such cases in subsequent boxes. In that way, the assistant in active charge will receive notice.

6. Appearances and Trial Bar Membership

All attorneys filing appearances must indicate whether or not they are members of the trial bar of this Court and whether or not they are the attorney who will try the case in the event that it goes to trial.

In criminal actions, an attorney who is not a member of the trial bar may not file an individual appearance. Pursuant to Local Rule 83.12, a member of the trial bar must accompany such attorney and must also file an appearance.

In civil actions, an attorney who is not a member of the trial bar should designate the trial bar attorney who will try the case in the event that it goes to trial. If a trial bar attorney is not listed on the initial appearance and the case goes to trial, a trial bar attorney, pursuant to Local Rule 83.17, must obtain leave of court to file an appearance.

7. Designation of Local Counsel

Pursuant to Local Rule 83.15, an attorney who does not have an office in this District may appear before this Court "only upon having designated, at the time of filing his/her initial notice or pleading, a member of the bar of this Court having an office within this District upon whom service of papers may be made." No attorney having an office in this District may designate local counsel. No attorney may designate more than one attorney as local counsel. Notices will be mailed by the Clerk's Office to both the attorney shown in box (A) and the attorney designated as local counsel.

8. Parties are Required to Consider Alternative Dispute Resolution

Pursuant to 28 U.S.C. §652(a), all litigants in civil cases pending before this Court are directed to consider the use of an alternative dispute resolution process at the earliest appropriate stage of the litigation. Such process may include mediation, early neutral evaluation, minitrial, or arbitration.

9. Local Rule 3.2 Requires Notification As To Affiliates

In every action in which an affiliate of a public company is a party, counsel for such party shall file with the Clerk a statement listing each public company of which such party is an affiliate. Where such party is a plaintiff the statement shall be filed with the complaint. Where such party is a defendant the statement shall be filed with the answer or motion in lieu of answer.